UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHARINE SAVIN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　　　Defendants. | Case No.16-cv-05627-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 46 |

Before the Court is Defendant Bruce Lery's motion to dismiss Plaintiff's first amended complaint. ECF No. 46. The Court will grant the motion in part and deny it in part.

## I.　BACKGROUND

Plaintiff Katharine Savin began working as a medical social worker at San Francisco General Hospital in February 2015. First Amended Complaint ("FAC"), ECF No. 39, ¶ 15. During her employment, Savin was assigned to the palliative care unit, which consisted of physicians, nurses, social workers, and a member of the clergy. Id. Father Bruce Lery was the clergy member assigned to the unit. Id. In that capacity, "he provided counseling and support services to patients of all faiths" and "his duties were not primarily religious in nature." Id. Defendants Dr. Heather Harris and Dr. Anne Kinderman supervised the unit. Id.

Savin alleges that "Father Lery repeatedly and consistently engaged in sexual harassment towards Plaintiff in the workplace" during her employment with San Francisco General Hospital. Id. ¶ 18. Specifically, she alleges that Father Lery "told her that they would make a 'cute couple' and invited her on a 'date' to a 'romantic' location." Id. ¶ 19. She further alleges that "[h]e consistently touched Plaintiff's shoulders, back, and thighs in the workplace, and [] made several comments about Plaintiff's physical appearance and clothes." Id. Plaintiff alleges that "Father

1  Lery hugged and held Plaintiff for an unreasonable amount of time when he would greet her in the
2  workplace," and that "[o]n more than one occasion, he placed his hands on her shoulders, and said,
3  'I love you so much.'" Id. ¶¶ 24, 20.  She also alleges that "Father Lery grabbed [her] by the
4  collar of her shirt in the workplace." Id. ¶ 21.  Once, "[d]uring a team photograph, Father Lery
5  placed his hands and fingers on Plaintiff's bare skin under her shirt, just above her breast, in an
6  alleged attempt to help her 'tuck' her collar in." Id. ¶ 22.  "When Father Lery placed his hands
7  down Plaintiff's shirt, he whispered to Plaintiff, 'I hope it is ok that I am doing this.'" Id. ¶ 23.
8  "Plaintiff immediately objected and asked that he stop." Id.  "On another occasion, Father Lery
9  asked Plaintiff to come back to his private office, so that he could give her a back and shoulder
10 massage." Id. ¶ 25.  Plaintiff declined. Id.

11 Plaintiff reported the conduct to her supervisors on two different occasions.  When she
12 verbally reported the conduct to Defendants Dr. Harris and Dr. Kinderman, Dr. Harris replied,
13 "Not again!" Id. ¶ 28.  The Defendants took no steps to investigate or to address the misconduct at
14 that time. Id.  Plaintiff reported the conduct again, this time via email, to Defendants Dr. Harris
15 and Dr. Kinderman. Id. ¶ 29.  Defendant Dr. Harris responded by calling Plaintiff on her cell
16 phone and "urg[ing] Plaintiff not to report the incident." Id.  Dr. Harris also "demanded that
17 Plaintiff cover up the email that she had sent." Id.  Defendants told Plaintiff that they "want to
18 protect everyone on [the] team, including Father Bruce," and they instructed Plaintiff not to "put
19 anything like this in writing again." Id.

20 In June 2015, San Francisco General Hospital's human resources department contacted
21 Savin to inform her that another nurse on the palliative care team had complained about Father
22 Lery's sexual harassment. Id. ¶ 30.  In total, Plaintiff alleges that "at least three other female
23 employees of San Francisco General Hospital made sexual harassment complaints against Father
24 Lery." Id. ¶ 27.  "[T]he hospital directors asked Plaintiff to attend a meeting to explain what
25 happened with Father Lery," and the hospital's human resources department asked Plaintiff to
26 participate in an investigation. Id. ¶ 31.  Plaintiff filed a formal written complaint with the
27 hospital's human resources department, but the department later informed Plaintiff "that there was
28 nothing that they could do to discipline Father Lery, as Defendants claimed he was not a 'City'

2

employee." Id. ¶¶ 31-32.

Plaintiff alleges that she was subjected to retaliation after she filed her formal complaint with the hospital's human resources department. Id. ¶ 35. Specifically, she alleges that Defendants "fail[ed] to properly and reasonably accommodate her medical condition and disability, thus subjecting Plaintiff to constructive termination . . . " Id. Plaintiff further alleges that, "when [she] made job inquiries in her field, Defendants actively interfered with Plaintiff's efforts" and "mischaracterized Plaintiff's qualifications and work." Id. ¶¶ 35-38. Plaintiff made a retaliation complaint to the human resources department, which conducted an investigation and found that her complaints were "substantiated," but nonetheless "refused to provide Plaintiff with a copy of the investigation report or determination letter, unless she agreed to a 'resolution' of the matter." Id. 39-40.

Based on the above conduct, Plaintiff brings several federal and state law claims against the City and County of San Francisco, the Archdiocese of San Francisco, Father Lery, Dr. Harris, and Dr. Kinderman. Id. ¶¶ 41-82. She asserts two claims against Defendant Father Lery, both of which are relevant for purposes of the present motion to dismiss. First, she brings a claim against Father Lery under 42 U.S.C. § 1983 for deprivation of her constitutional rights to privacy, free speech, and right to petition under the First and Fourteenth Amendments to the United States Constitution. Id. ¶¶ 41-46. Second, she brings a claim against Father Lery under California's Fair Employment and Housing Act ("FEHA") for sexual harassment. Id. ¶¶ 59-65. She seeks relief in the form of actual damages, punitive damages, and injunctive relief. Id. at 17.

Father Lery now moves to dismiss both claims against him. ECF No. 46.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662,

3

678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this standard is not a probability requirement, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). "Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011).

## III. DISCUSSION

Father Lery moves to dismiss both of Plaintiff's claims against him on the following grounds: (1) Plaintiff has not alleged facts to establish that he was acting under color of law, as required to state a claim under 42 U.S.C. § 1983; and (2) Father Lery is exempt from liability under FEHA because he is an employee of a religious corporation, the Archdiocese of San Francisco. ECF No. 46 at 2. Father Lery also argues that Plaintiff's allegations would require "this Court to make an impermissible adjudication of what is and is not 'religious' in nature in violation of the First Amendment." Id. at 3. The Court addresses each argument in turn.

### A. Section 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . " 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." McDade v. West, 223 F.3d 1135, 1139 (9th Cir. 2000) (citing Wyatt v. Cole, 504 U.S. 158, 161 (1992)).

To state a claim for relief under Section 1983, Plaintiff must plead two essential elements:

(1) that the Defendant acted under color of state law; and (2) that the Defendant caused her to be deprived of a right secured by the Constitution and laws of the United States. Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997) (citing Howerton v. Gabica, 708 F.2d 380, 382 (9th Cir. 1983)). Only the first element is at issue here.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at 1139-40 (internal quotation marks omitted). And "[i]t is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. "For conduct to relate to state authority, it must bear some similarity to the nature of the powers and duties assigned to the defendants." Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476, 480 (9th Cir. 1991) (quoting Murphy v. Chicago Transit Authority, 638 F. Supp. 464, 468 (N.D. Ill. 1986)).

The Ninth Circuit applied this standard in the context of alleged sexual abuse by a government employee in Dang Vang v. Vang Xiong X. Toyed, 944 F.2d 476 (9th Cir. 1991). In that case, the Ninth Circuit held that there was sufficient evidence to support the jury's conclusion that a Washington state employee "responsible for interviewing and finding refugees suitable for employment" acted under color of law when he raped refugees who had contacted him in order to find employment. Id. The court reasoned that "[b]oth plaintiffs in this case came into contact with [the defendant] because of their need for employment and their understanding that [the defendant] and his department could be relied upon to supply jobs to Hmong refugees." Id. at 480. Based on this and other evidence, the court concluded that "[t]he jury could have found that each plaintiff was raped during a meeting with [the defendant] related to the provision of services pursuant to his state employment." Id. As a result, the court decided that "the evidence was sufficient to lead the jury to conclude [the defendant] acted *in abuse of his state authority*, and to find that he acted under color of state law in raping the plaintiffs . . . " Id. (emphasis in original).

The Ninth Circuit distinguished the facts of Dang Vang from another case, Murphy v.

5

Chicago Transit Authority, 638 F. Supp. 464 (N.D. Ill. 1986). Id. at 479-80. In Murphy, an attorney employed by the Chicago Transit Authority sued her coworkers under Section 1983 for sexual harassment at her workplace. Murphy, 638 F. Supp. at 465-66. The Murphy court acknowledged that the defendant coworkers "engaged in their abusive and offensive conduct while at their place of employment" and that they "were capable of harassing plaintiff only because their jobs enabled them to have frequent encounters with her." Id. at 468. However, the court noted, this "does not mean that defendants' actions were pursued under color of state law." Id. The court found that "the humiliating comments and harassing behavior had nothing to do with, and bore no similarity to, the nature of the staff attorney job." Id. Because "the abusive conduct was not in any way related to the duties and powers incidental to the job of CTA staff attorney," the court concluded that the defendants were not acting under color of law. Id.

Collectively, Dang Vang and Murphy establish that "[a] state official may be liable for co-worker harassment under section 1983 when the abuse is related to state-conferred authority or duties . . . " Anthony v. County Of Sacramento Sheriff's Department, 845 F. Supp. 1396, 1401 (E.D. Cal. 1994); see also, e.g., Sanchez v. California, 90 F. Supp. 3d 1036, 1065–66 (E.D. Cal. 2015) (holding that the defendant coworker was not acting under color of law because "[t]he actions [he] allegedly took in sexually harassing Plaintiff do not bear any similarity to the nature of the powers and duties assigned to correctional officers"). Therefore, this Court must determine whether there is a "nexus between the defendant's misconduct and his relationship to the state," or alternatively, whether the "acts of co-worker harassment . . . occurred in a state-created workplace but were . . . independent of state roles and functions." Anthony, 845 F. Supp. at 1401.

The Court concludes that Plaintiff has failed to adequately allege the requisite nexus between the alleged sexual harassment and Father Lery's official duties. Although Plaintiff alleges that Father Lery was employed by a government entity,[1] government employment is not

---

[1] Father Lery disputes this, arguing that "Plaintiff pleads no facts establishing that [he] was paid by, or received any benefits from, the City, or any specific facts that the City directed or controlled any of [his duties]." ECF No. 46 at 5-6. As explained below in Part III.B., compensation is not dispositive of the employment inquiry, and Plaintiff has plausibly alleged that Father Lery was jointly employed by the City and the Archdiocese of San Francisco.

6

sufficient on its own to show that an individual was acting under color of state law. FAC, ECF No. 39 ¶ 4, 8; Polk County v. Dodson, 454 U.S. 312, 321 (1981). Nor is the fact that the alleged misconduct occurred on work premises sufficient to show that the misconduct was related to the authority conferred on Father Lery by the state. Murphy, 638 F. Supp. at 468. Aside from these insufficient allegations, Plaintiff fails to allege any facts to show that Father Lery's alleged sexual harassment was related to his official duties, which she describes in her complaint to include "provid[ing] counseling and support services to patients of all faiths." FAC, ECF No. 39 ¶ 8.[2] Therefore, Plaintiff's own description of Father Lery's official duties suggests that the alleged sexual harassment was "independent of state roles and functions." Sanchez, 90 F. Supp. 3d at 1065–66. Accordingly, the Court grants the motion to dismiss the Section 1983 claim against Father Lery.

However, the Court grants Plaintiff leave to amend her complaint to allege additional facts to show that Father Lery was acting under color of law at the time of the alleged sexual harassment. Leave to amend should be given freely, and amendment would not be futile in this instance because the state action element of Section 1983 liability is heavily fact-intensive. See McDade, 223 F.3d at 1139 (describing the state action requirement as "a process of sifting facts and weighing circumstances").

The Court addresses one final argument to clarify the scope of amendment. Contrary to Father Lery's contention, Plaintiff does not need to show that the deprivation of her constitutional rights was "caused by an official policy." ECF No. 46 at 8 (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-95 (1978)). In Monell, the Supreme Court held that local governments cannot be sued under Section 1983 for injuries inflicted by their employees unless the employee was acting pursuant to a government "policy or custom." Monell, 436 U.S. at 690-95. But the defendant employees in Monell were "sued solely in their official capacities." Id.

---

[2] Plaintiff alleges that Father Lery "placed his hands on a female patient's breasts, and . . . placed his hands just above a patient's sister's breast, who only spoke Spanish." FAC, ECF No. 39 ¶ 26. Although this misconduct arguably constitutes an abuse of his official position vis-à-vis his patients, Plaintiff has made no showing that she has standing to vindicate the constitutional rights of third parties that are not before the Court. See Outdoor Media Grp., Inc. v. City of Beaumont, 464 F. App'x 611, 613 (9th Cir. 2011).

at 661. And Monell does not apply to state officials or individuals who are sued in their *individual* capacities. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Amory v. Katz, No. 3:15-CV-01535 (VAB), 2016 WL 7377091, at *5 (D. Conn. Dec. 19, 2016). Because Plaintiff sues Father Lery in his individual capacity, and does not bring a Section 1983 claim against any municipal entity, she does not need to allege that he was acting pursuant to an official policy or custom. FAC, ECF No. 39, ¶¶ 7, 41-46.

The Court dismisses Plaintiff's Section 1983 claim against Father Lery without prejudice.

**B.     FEHA**

Section 12940(j) of the California Government Code makes it unlawful "[f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of . . . sex . . . , to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract." Cal. Gov. Code § 12940(j)(1). Section 12940(j) also provides that "[a]n employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Id. § 12940(j)(3).

Section 12940(j) excludes non-profit religious associations or corporations from the definition of an "employer," except as provided in Section 12926.2. Id. § 12940(j)(4)(B). In turn, Section 12926.2 provides that a religious corporation or association is an "employer" "with respect to persons employed by the religious association or corporation to perform duties, other than religious duties, at a health care facility operated by the religious association or corporation for the provision of health care that is not restricted to adherents of the religion that established the association or corporation." Id. § 12926.2(c).

Because the Archdiocese of San Francisco is not an "employer" under FEHA,[3] it is exempt

---

[3] The Court takes judicial notice of the fact that the Archdiocese of San Francisco is a non-profit Roman Catholic institution pursuant to Federal Rule of Evidence 201 because it is generally known or readily determinable. ECF No. 47. The Court also takes judicial notice of the Archdiocese's website, which describes its mission. Id. However, the Court denies the request to

from Plaintiff's sexual harassment claim. See Bohnert v. Roman Catholic Archbishop of San Francisco, 136 F. Supp. 3d 1094, 1111–13 (N.D. Cal. 2015). So are its employees. See Taylor v. Beth Eden Baptist Church, 294 F. Supp. 2d 1074, 1083-84 (N.D. Cal. 2003) (holding that the religious entity exemption for employers extends to employees of such an entity). This interpretation aligns with the text of the statute, which only imposes personal liability for harassment on "[a]n employee of *an entity subject to this subdivision*." Cal. Gov. Code § 12940(j)(3)(emphasis added). Moreover, the exception in Section 12926.2(c) does not apply here because San Francisco General Hospital is not "operated by" the Archdiocese. Cal. Gov. Code § 12926.2(c).

However, Plaintiff alleges that "Father Lery was *employed jointly* by both Defendants San Francisco General Hospital and the Archdiocese." FAC, ECF No. 39 ¶ 8 (emphasis added). While the latter is exempt from FEHA, the former is not. Therefore, Father Lery can be held personally liable for sexual harassment under FEHA if he was jointly employed by both the Archdiocese and the City.

Courts have recognized joint employment in the context of FEHA and its federal counterpart, Title VII. See Vernon v. State, 116 Cal. App. 4th 114, 121-131 (2004); Knitter v. Corvias Military Living, LLC, 758 F.3d 1214, 1226 (10th Cir. 2014) (applying joint employer test under Title VII). To determine whether the plaintiff was jointly employed, courts consider several factors, including the following: payment of salary and benefits; ownership of the equipment necessary to performance of the job; the location where the work is performed; the obligation of the defendant to train the employee; the defendant's authority to hire, transfer, promote, discipline or discharge the employee; the authority to establish work schedules and assignments; the defendant's discretion to determine compensation; and the extent to which the work performed is done under the direction of a supervisor, among other factors. Vernon, 116 Cal. App. 4th at

---

take judicial notice of third party websites describing the Archdiocese of San Francisco because those sources are not capable of accurate and ready determination. See Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1028-29 (C.D. Cal. 2015) ("As a general matter, courts are hesitant to take notice of information found on third party websites and routinely deny requests for judicial notice . . . ") (summarizing cases).

124-26. Although no single factor is dispositive, "the extent of the defendant's right to control the means and manner of the workers' performance is the most important." Id. (internal quotation marks omitted). To survive a motion to dismiss, "a plaintiff seeking to hold multiple entities liable as joint employers must plead specific facts that explain how the defendants are related and how the conduct underlying the claims is attributable to each." Andrade v. Arby's Rest. Grp., Inc., No. 15-CV-03175 NC, 2015 WL 6689475, at *2 (N.D. Cal. Nov. 3, 2015) (internal quotation marks and brackets omitted) (dismissing claims against one defendant because plaintiff did not "allege[] facts showing that [the defendant] controlled her employment or [the co-defendant's] employment of her").

Plaintiff has plausibly alleged that Father Lery was jointly employed by the Archdiocese and San Francisco General Hospital. FAC, ECF No. 39 ¶ 8. She alleges that, although the Archdiocese initially assigned Father Lery to the Palliative Care Team at San Francisco General Hospital, "San Francisco General Hospital managed and controlled all aspects of Father Lery's employment, while [he] worked at San Francisco General Hospital." Id. As explained above, the entity's control over the employee's work is the most important factor to consider. In addition, Plaintiff alleges that Father Lery performed his work at the hospital and was supervised by physicians at the hospital. Id. ¶¶ 7-10, 15. Plaintiff further alleges that the hospital's human resources department handled her internal complaint about Father Lery's conduct and conducted an investigation, but that the hospital was ultimately unable to discipline Father Lery because "they claimed he was not a 'City' employee." Id. ¶ 30-32. Given that the hospital handled several internal complaints regarding Father Lery's misconduct, including her own, Plaintiff has also pleaded specific facts that explain why the hospital knew or should have known about the harassing conduct, and thus why the hospital is also potentially liable under FEHA. Id. Construing Plaintiff's allegations in the light most favorable to her, as the Court must when ruling on a motion to dismiss, the Court concludes that Plaintiff has plausibly alleged that Father Lery was jointly employed by the Archdiocese and the City.

Although Father Lery may eventually show that he was employed solely by the Archdiocese, and thus that he is exempt under FEHA, the joint employment inquiry "tends to be

intensely fact-dependent and the ultimate determination is based on the totality of the circumstances . . ." DelGiacco v. Cox Commc'ns, Inc., No. SACV 14-0200 DOC, 2015 WL 1535260, at *7 (C.D. Cal. Apr. 6, 2015) (citing Vernon, 116 Cal. App. 4th at 125). "Such fact-intensive inquiries . . . are best left to trial or summary judgment, and not to a motion to dismiss." Garbini v. Prot. One, Inc., 49 F. App'x 169, 170–71 (9th Cir. 2002). The Court therefore denies the motion to dismiss Plaintiff's sexual harassment claim against Father Lery at this early stage in the litigation.

### C. First Amendment

In her complaint, Plaintiff alleges that, "[a]lthough Father Lery was assigned as the clergy member of the Palliative Care Team, his duties were not primarily religious in nature, and he provided counseling and support services to patients of all faiths." FAC, ECF No. 39 ¶ 8. Based on this allegation, Father Lery argues that "Plaintiff essentially asks this Court to make an impermissible adjudication of what is and is not 'religious' in nature in violation of the First Amendment." ECF No. 46 at 3, 9. To support this argument, Father Lery relies in part on case law addressing the ministerial exception to employment laws. Id. (citing Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 565 U.S. 171 (2012)). This argument fails.

Although the Supreme Court has held that the First Amendment's religion clauses create a ministerial exception to employment discrimination laws, Hosanna-Tabor, 565 U.S. at 188-90, Father Lery concedes that "the First Amendment does not shield [him] from liability for harassment . . ." ECF No. 73 at 3. Indeed, the ministerial exception only forecloses sexual harassment and retaliation claims to the extent they implicate protected employment decisions—i.e., "a church's decisions about whom to employ as a minister." Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 953, 964 (9th Cir. 2004) (refusing to "afford[] blanket First Amendment protection to churches that unreasonably fail to address clear instances of sexual harassment . . . even when no protected ministerial choice or church doctrine is in fact involved"). Because Plaintiff's allegations of sexual harassment do not implicate any protected employment decisions about whom to employ as a minister, her claims are not barred by the ministerial exception. See generally FAC, ECF No. 39.

11

Nor does the ministerial exception somehow prevent this Court from considering whether Father Lery's job duties were primarily religious in nature. ECF No. 73 at 3 ("Plaintiff's attempted characterization of Fr. Lery's pastoral counseling as being 'non-religious' presents a matter that is not itself justiciable . . ."). The Supreme Court's reasoning in Hosanna-Tabor, the case that established the ministerial exception, belies this very contention. There, the Court refused "to adopt a rigid formula for deciding when an employee qualifies as a minister." Hosanna-Tabor, 565 U.S. at 190. Instead, it considered "all the circumstances of [] employment" to determine whether the ministerial exception applied to the plaintiff in that case. Id. at 190-91. For example, the Court considered "the formal title given [plaintiff] by the Church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the Church." Id. at 191-92. The Court noted that plaintiff's "job duties"—which included teaching her students religion and leading them in prayer – "reflected a role in conveying the Church's message and carrying out its mission." Id. Other courts have engaged in a similar analysis, noting that, "[a]t the very least, the determination of whether the 'ministerial exception' applies depends upon numerous factual determinations, such as whether [the employee's] functions were primarily spiritual or religious in nature, or whether the church held her out as a spiritual leader." Bohnert v. Roman Catholic Archbishop of San Francisco, 136 F. Supp. 3d 1094, 1113–15 (N.D. Cal. 2015). Therefore, the ministerial exception does not prevent this Court from adjudicating whether Father Lery's job duties were primarily religious in nature.

Father Lery also relies heavily on a case in which the California Supreme Court declined to impose on pastoral counselors a duty to prevent suicide. ECF No. 46 at 9 (citing Nally v. Grace Community Church of the Valley, 47 Cal. 3d 278, 299 (1988)); ECF No. 73 at 6 (quoting the same case). As an initial matter, that case turned on "traditional tort law principles" for establishing a duty of care, not constitutional questions. Nally, 47 Cal. 3d at 291, 292-299 (affirming the trial court's decision based on "well-established principles of tort law" and "not address[ing] the constitutional issues posed by defendants"). Those tort law principles are simply not at issue in this case, which involves an affirmative legal duty imposed by statute. To the extent the Nally court even mentioned potential constitutional issues, it did so in dicta. The only mention of

religious abstention appears at the very end of the court's analysis under the heading "Public Policy Considerations." Id. at 297-99. There, the court stated that, "even assuming that workable standards of care could be established in the present case . . . . it would certainly be impractical, and quite possibly unconstitutional, to impose a duty of care on pastoral counselors" because "[s]uch a duty would necessarily be intertwined with the religious philosophy of the particular denomination or ecclesiastical teachings of the religious entity." Id. at 299. Father Lery does not argue, and the Court suspects he could not successfully argue, that the statutory duty not to sexually harass a co-worker is similarly intertwined with religious philosophy or doctrine such that the Court cannot or should not adjudicate this dispute.

"Absent a religious justification for the harassment [] alleged or a protected, ministerial choice that [Plaintiff's] suit would second-guess," Father Lery's argument "boil[s] down to a 'generalized and diffuse concern for church autonomy' that [does] not trigger the ministerial exception." Elvig, 375 F.3d at 956 (quoting Bollard v. California Province of the Soc'y of Jesus, 196 F.3d 940, 948 (9th Cir. 1999)). The issue to be adjudicated – i.e., whether Father Lery subjected the Plaintiff to sexual harassment in violation of California law – involves a "purely secular inquiry." Elvig, 375 F.3d at 959. Therefore, the Court may adjudicate Plaintiff's sexual harassment claim against Father Lery consistent with the First Amendment.

## CONCLUSION

The Court grants the motion to dismiss Plaintiff's Section 1983 claim without prejudice and denies the motion to dismiss Plaintiff's FEHA sexual harassment claim. If Plaintiff wishes to cure the deficiency in her Section 1983 claim against Father Lery, she must file an amended complaint within thirty (30) days of this Order. Failure to file the amended complaint by the deadline will result in the dismissal of Plaintiff's Section 1983 claim as to Father Lery.

IT IS SO ORDERED.

Dated: June 22, 2017

_____
JON S. TIGAR
United States District Judge